IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. PATRICK PETE STOVER,<br>2. SHERI LYNN STOVER,<br><br>    Plaintiffs,<br><br>v.<br><br>1. STATE FARM FIRE AND CASUALTY<br> COMPANY, a foreign for profit insurance<br> corporation,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No.: 17-cv-1002-HE<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' MOTION TO EXLCUDE
## DEFENDANT'S EXPERT, MICHAEL BERRYMAN

Pursuant to Rule 702 of the Federal Rules of Evidence, Plaintiffs, Patrick Stover and Sheri Stover (hereinafter "Plaintiffs"), respectfully move the Court to exclude Defendant's construction expert, Michael J. Berryman ("Berryman"), from providing expert testimony, and to further exclude from evidence at trial Berryman's expert report. In support of this Motion, Plaintiffs respectfully state as follows:

### INTRODUCTION

On May 16th, 2017, the Stovers' home was destroyed as the result of the Elk City tornado. At the time of the loss, the Stovers were insured under the terms and conditions of an insurance policy issued by the Defendant, State Farm Fire and Casualty Company. This case arises from Defendant's improper and unreasonable investigation, evaluation, and adjustment of the Stover's insurance claim. On August 15th, 2018, both parties filed Motions for Partial Summary Judgment (Document Nos. 63 & 64). For a detailed factual

1

overview of this case, Plaintiffs respectfully direct the Court to their Motion for Partial Summary Judgment.

During the course of this litigation, Defendant has retained Michael J. Berryman and intends to offer his testimony into evidence as a construction expert. For the reasons set forth herein, Mr. Berryman should be excluded from providing expert testimony in this case and, further, Defendant should be excluded from offering Mr. Berryman's report into evidence at trial.

## **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence provides: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Bright v. Ohio Nat'l Life Assur. Corp., 2013 U.S. Dist. LEXIS 3324, at *2 (N.D. Okla., Jan. 9, 2013). "When an objection to an expert's testimony is raised, the court must perform Daubert gatekeeper duties before the jury is permitted to hear the evidence." Id. (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). "A trial court's gatekeeper duty requires two separate inquiries: (1) the witness must be qualified to offer the opinions he is espousing and (2) the proponent of the

witness bears the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable." Id. at *2-3 (citing Kumho Tire, 526 U.S. at 141, 152).

The Court should only admit expert testimony where the following four conditions are met: (1) it is helpful to the trier of fact, (2) it is based on sufficient facts, (3) it is the product of reliable principles and methods, and (4) the expert reliably applied the principles and methods to the case. The court's inquiry is "a flexible one" but "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 594-95. "At a minimum, [the expert] should describe the method he used in reaching, and the data supporting, his determination. The Court cannot rely on an expert's mere assurance that the methodology and data are reliable." Bright, 2013 U.S. Dist. LEXIS 3324, at *3 (citing Alexander v. Smith & Nephew, P.L.C., 98 F. Supp. 2d 1287, 1293, 98 F. Supp. 2d 1276 (N.D. Okla. 2000)).

## ARGUMENT AND AUTHORITY

Here, a Daubert analysis demonstrates that Mr. Berryman's opinions are unreliable and unhelpful to the trier of fact.

**I: Mr. Berryman is Not Qualified to Testify Regarding Insurance Industry Standards and/or Practices**

Proffered expert testimony "must be tested to be sure that the person possesses genuine expertise in a field. . . . [T]he district court must ensure that it is dealing with an expert, not just a hired gun." Tyus v. Urban Search Mgmt, 102 F.3d 256, 263 (7th Cir. 1997). A court looks first to whether the proffered expert is qualified by knowledge, skill,

experience, training or education to render the proffered opinions, and second whether the expert's opinions are "reliable." Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001). Under Kumho Tire, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting Mitchell v. Gencorp Inc., 165 F.3d 778, 782 (10th Cir. 1999)).

An expert's qualifications must directly relate to the issues on which he or she intends to testify. It is not sufficient that the proffered expert has a basic understanding of the subject and some experience in the area. And, even if qualified to testify, the expert's testimony must be confined to his or her specific area of expertise. See Broadcourt Capital Corp. v. Summa Medical Corp., 972 F.2d 1183, 1195 (10th Cir. 1992) (proposed expert experienced in the brokerage and securities business, but with only "general knowledge" of the specific area at issue, was not qualified as expert); Ralston, 275 F.3d at 970 ("merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue."); See also, In re Williams Sec. Litig., 496 F. Supp. 2d 1195, 1232 (N.D. Okla. 2007) (proffered expert's qualifications must be both adequate in a general qualitative sense, and "specific to the matters he proposes to address as an expert.").

Here, Mr. Berryman should be prohibited from offering any opinions regarding insurance coverage, insurance standards, insurance claim practices, or insurance industry standards/practices. Mr. Berryman's report makes frequent statements regarding insurance industry standard practices and he often describes how he believes an insurance

company should act and behave. The below list, while not exhaustive, is typical of the references made throughout Mr. Berryman's report:

- "Dason's generalized approach is inconsistent with the methodology and format routinely used by insurance carriers…" (Exhibit 1 – Berryman Report, at Page 11)

- "the existing home can be restored using the industry standard practices." (Exhibit 1, at Page 11)

- "Any additional needed work that might arise during the restoration process would customarily be added by supplemental estimate as this is the industry common practice." (Exhibit 1, at Page 12)

- "State Farm appears to have inspected the property for damages using common practices." (Exhibit 1, at Page 14)

- "In an industry standard manner State Farm sent the Gendill and Swyden reports to Heesch for review and comment." (Exhibit 1, at Page 16)

Mr. Berryman is simply not qualified to opine regarding insurance industry standard practices. Mr. Berryman is not a licensed insurance adjuster and has never worked adjusting claims:

> Q. Well, then I guess we'll just have to let the code official decide that. But nonetheless, may I ask you if you are a licensed adjuster?
>
> A. I am not.
>
> Q. Have you ever worked adjusting claims?
>
> A. No.

5

(Exhibit 2 – Deposition of Michael Berryman; Page 25, Lines 8-13)

Mr. Berryman has no insurance experience or training whatsoever. Accordingly, he is unqualified to offer any opinion as to insurance industry standards or practices. Mr. Berryman's testimony regarding insurance practices, insurance supplementation, insurance claim practices, etc. should be excluded.

Further, Mr. Berryman should not be allowed to disguise testimony regarding insurance standards and claim practices as "restoration" standards. For example, Mr. Berryman testified that, while he is unfamiliar with "insurance standards", he is familiar with the "insurance property restoration business" and its standards:

> Q. And you're not familiar with insurance standards, are you?
>
> A. I'm not familiar with insurance standards, but I'm very familiar with what goes on in the marketplace in the insurance property restoration business.
>
> (Exhibit 2; Page 135, Lines 23-25; Page 136, Lines 1-3).

As stated above, Mr. Berryman is not a licensed adjuster and has never adjusted insurance claims. Mr. Berryman has no insurance experience or training. Accordingly, Mr. Berryman should not be allowed to offer testimony regarding insurance coverage, insurance standards, insurance claim practices, insurance industry standards/practices, or otherwise testify as to what insurers ordinarily do, should do, or should not do, regardless of whether or not said testimony is couched as "property restoration business" standards.

## II: Mr. Berryman's Opinions Regarding Plaintiffs' Damaged I-Joists are Unreliable and Should be Excluded

Mr. Berryman should be prohibited from offering any opinion regarding Plaintiffs' damaged I-Joists, as any opinions Mr. Berryman has about the I-Joists are unreliable. Mr. Berryman failed to adequately inspect Plaintiffs' I-Joists and thus he should be prohibited from offering any opinions on them. Proper inspection of the I-Joists requires a ladder, as the I-Joists are part of the ceiling structure. During his inspection of the Plaintiffs' home, Mr. Berryman did not conduct an up close, visual inspection of Plaintiffs' ceiling I-Joists:

> Q. Okay, sir. Now, I'm going to ask you, at the time you went out and inspected the Stovers' home, you knew at that time that there was an issue between the Stovers and State Farm as to whether or not there was additional damage to the I-joists, the engineered I-joists that had not been accounted for, didn't you?
>
> A. I don't -- I don't recall if I knew that or not. I mean, is that in somebody's report that you're referring to?
>
> Q. I'm asking you if you knew that at the time.
>
> A. I just don't recall if I specifically knew that or was focusing on that, you know, the fact that there was a disagreement or not, I looked at them, but –
>
> Q. You never got on a ladder or even got close to looking at them, did you?
>
> A. I was, you know, between here and this ceiling from them.
> ….
> Q. And is it true that you never got on a ladder and looked close at the engineered I-joists at the Stovers' home?
>
> A. That's true, because it wouldn't have made any difference whether I looked at it up close or not, it would not have divided the line of truth. A visual examination is not going to do it.
>
> (Exhibit 2; Page 131, Lines 2-22; Page 135, Lines 3-9)

Indeed, in Mr. Berryman's opinion, an analysis of the I-Joists would require laboratory testing, which he doesn't know anything about and did not do. (Exhibit 2; Page 134, Lines 10-18). Further, Mr. Berryman admitted in his deposition that he simply doesn't know, one way or the other, if any of Plaintiffs' I-Joists were damaged:

> Q. Do you know whether or not, as you sit here today, at the time of your inspection of the Stovers' home, do you know if any of the engineered I-joists were damaged in any way?
>
> A. The day I was there?
>
> Q. Yes, sir.
>
> A. I don't know that without having them tested.
>
> (Exhibit 2; Page 135, Lines 14-21)
> …..
> Q. Okay. My question is, as you sit here, do you know one way or another whether or not more than two of the engineered I-joists at the Stovers' home were damaged by the tornado?
>
> A. I don't know that.
>
> Q. Do you know one way or another, as you sit here today, whether more than two of the engineering I-joists were damaged within the first three months after the storm, the tornado, as a result of resultant water damage?
>
> A. I don't know that.
>
> Q. As you sit here today, through everything you've looked at, you don't know how many of the engineered I-joists were damaged at the Stovers' home, do you?
>
> A I didn't see them myself, I know it's in the photography, what's written in the reports, that's all I know.
>
> Q. But you don't have any personal knowledge from your own inspection how many engineered I-joists may have been damaged; correct?

8

A. That's correct.

(Exhibit 2; Page 137, Lines 23-25; Page 138, Lines 1-19)

Accordingly, any testimony offered by Mr. Berryman regarding the Plaintiffs' I-Joists should be excluded, as those opinions are unreliable and improper under Daubert.

## CONCLUSION

As set forth herein, Mr. Berryman should be excluded from providing expert testimony in this case and, further, Defendant should be excluded from offering Mr. Berryman's report into evidence at trial. Plaintiffs respectfully request any additional relief that this Court deems just and proper.

Respectfully submitted,

s/ *Matthew M. McGrew*
Matthew M. McGrew, OBA# 32065
MCGREW, MCGREW & ASSOCIATES, PC
400 North Walker Avenue, Suite 115
Oklahoma City, Oklahoma 73102
(405) 235-9909 Telephone
(405) 235-9929 Facsimile
mcgrewslaw@yahoo.com
**ATTORNEY FOR THE PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September, 2018, I electronically transmitted the foregoing document, Plaintiffs' Motion to Exclude Defendant's Expert to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lance Leffel
John M. "Jake" Krattiger
Jace White
**GableGotwals**
One Leadership Square 15th floor
211 N. Robinson
Oklahoma City, OK 73102

**Counsel for Defendant**

*s/ Matthew M. McGrew*