# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) PATRICK PETE STOVER | ) | |
| (2) SHERI LYNN STOVER | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-1002-HE |
| | ) | |
| (1) STATE FARM FIRE & CASUALTY | ) | |
| COMPANY, a foreign for profit insurance | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANTS' RULE 26 REPORT

# Michael J. Berryman

{S450951;}



# Berryman

426 N.W. 5TH
Oklahoma City, OK 73102
Off: (405) 235-4646
Fax: (405) 235-3311
Email: mberryman@berrymanokc.com

June 29, 2018

Jeffrey A. Curran
Gable Gotwals
One Leadership Square, 15th Floor
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102

**Re:   Patrick Pete Stover and**
       **Sheri Lynn Stover, Plaintiffs**
       **v.**
       **State Farm Fire and Casualty**
       **Company, a foreign for-profit**
       **insurance corporation,**
       **Defendant**
       **United States District Court o**
       **Western District of Oklahoma**
       **Case No.:  CIV-17-1002-HE**

Dear Mr. Curran:

The following report details to date my pertinent observations, opinions and conclusions and can be changed only in writing by the undersigned. In forming my opinions I utilized my forty (40) years of experience as a construction general contractor as well as my formal education, training and knowledge previously acquired. I reserve the right to supplement this report to address additional information made available to me and to provide illustrative exhibits at a later date.

## DOCUMENTS RELIED UPON

- Complaint, Plaintiffs' Discovery Responses to Defendant's First Interrogatories and Requests for Production bates stamped SF.STOVER_0000001-SF.STOVER_0003197
- Certified copy of policy
- Policy record FE-2340
- Policy record FE-3301
- Policy record FE-3512
- Policy record FE-5706.3
- Policy record FP-7945
- Renewal certificate
- Deposition of Greg Morgan taken 4/11/18 w/ exhibits #1-8.
- Deposition of Sheri Lynn Stover taken 6/08/18 w/exhibits #1-8
- Deposition of Patrick Stover taken 6/08/18
- Deposition of Carmen Richwine taken 4/12/18
- SFFCC initial disclosure: Claim No. 36-43F1-266 bates stamped SF.STOVER_00000001-SF.STOVER_ 00000285-00001131
- Stover production 1-416
- SFFCC bates stamped STOPA0000001PROD-STOPA00000358PROD
- Defendant, State Farm Fire and Casualty responses and objections to Plaintiffs' First Set of Interrogatories and Requests for Production
- Plaintiffs' Responses to Defendant's First Interrogatories and Requests for Production
- Kevin Hefley Rule 26 report
- Sean Petronzi Rule 26 report
- Chris Ramseyer Rule 26 report
- https://www.facebook.com/Murphey-Construction-436810646689337/

## QUALIFICATIONS

In the course of my career as a general contractor my firm has provided property restoration services on hundreds of structures, including residential homes that have been damaged by tornadic events.  The property damages were covered by insurance policies issued by at least twenty (20) different insurance carriers.  Many of the repaired structures were damaged in the tornadoes that struck central Oklahoma in 1999, 2003, 2008 and 2013.  I continue to examine damaged structures and submit construction proposals to the public for their restoration.  In the regular course of business I estimate the

construction cost and outline the scope of work that is an integral part of my firm's offers to contract for needed property restoration.

I have for the last seventeen (17) years utilized Xactimate, a computerized estimating program, to determine the estimated cost of property damage restoration.[1] I interface with insurance professionals and have developed a keen understanding of the customary means, methods and pricing for the restoration of damaged real property.

On more than 1,000 occasions, my firm has been hired as a consultant by property owners, property management companies, insurance carriers and others to inspect and render opinions on the nature and extent of property damages as well as the anticipated cost of their repair. I have been qualified as an expert witness in building and construction in the United States District Courts of the Western, Eastern and Northern Districts of Oklahoma as well as in the District Courts of Oklahoma County and other counties in the State of Oklahoma.

## BACKGROUND

Pete and Sheri Stover (Stover), owners of the property located at 117 Fairway Drive, Elk City, Oklahoma, filed an insurance claim with State Farm Fire and Casualty Company (State Farm) on or about May 16, 2017 under the insurance policy #36-BM-Y649-4. The reported date of loss was May 16, 2017. State Farm assigned claim #360140Z24 to the loss event. Other relevant background information includes:

1. State Farm adjuster Greg Morgan (Morgan) inspected the Stover property on 5/18/17. State Farm's estimate of damage (RCV) totaled $623,020.03 for the home and $11,685.49 for "dwelling extensions," e.g. fencing.[2] It was completed on June 20th and presented to the Stover on June 23, 2017.

2. David P. Swyden, P.E. (Swyden), a licensed structural engineer with Benham Design, LLC inspected the Stover home and issued a report dated June 30, 2017[3].

---

[1] Xactimate is considered to be an industry standard and is utilized by most restoration contractors and the majority of insurance carriers in the United States and Canada to estimate the anticipated cost to restore property damages, including those repairs needed to correct damages caused by tornadic activity.
[2] SF.STOVER_00000584-727.
[3] SF.STOVER_00000380-389.

Stover et al. v. State Farm Fire and Casualty Company                              June 29. 2018
U.S.D.C. No.: CIV-17-1002-HE                                                       Page 4
Case: 2017 L 005618

3.  State Farm engaged Envista Forensics to assist in determining the extent of any structural damage. Theodore Heesch Jr., P.E. (Heesch) visited the site on behalf of Envista and issued a report dated 6/22/17.[4]

4.  The Stovers hired Anasazi Engineering to offer an opinion concerning the structural integrity of the damaged home. Jim Gendill, P.E. (Gendill) visited the site on July 11, 2017 and issued his report dated 7/13/17.[5]

5.  State Farm sent the Swyden and Gendill reports to Heesch for his evaluation and consideration. Heesch responded with a supplemental written report dated 8/18/17.[6]

6.  On August 11, 2017 the Stovers advised State Farm that they believed the home would cost more to restore than to replace. Greg Morgan asked them to provide a contractor's estimate in support of their viewpoint for his review and reconciliation.[7]  The Stovers did not submit a contractor's estimate to State Farm.

7.  Suit was filed by the Stovers on or about September 26, 2017.

8.  As of June 13, 2018, the restoration work estimated by State Farm had not been started.

9.  Chris Ramseyer. Ph.D., P.E. with Ramseyer and Associates, PLLC (Ramseyer) submitted a report in this matter dated June 15, 2018.

10. Kevin Hefley of Dason Fire & Water Restoration. Inc. (Dason) issued a report in this matter dated June 15, 2018.


## ISSUE

The Plaintiffs in this matter claim their storm damaged home cannot be repaired and instead needs to be completely razed and rebuilt. Consequently, they believe State Farm underestimated the cost to restore their property to its condition prior to the storm damages. I reviewed the documents outlined above

---

[4] SF.STOVER_00000298-359.
[5] SF.STOVER_00000404-438.
[6] SF.STOVER_00000288-294.
[7] SF.STOVER_00000154

and conducted a site visit on June 13, 2018 in order to form opinion(s) concerning:[8]

1. The nature and extent of the storm damages as well as the necessary scope of work to restore it.

2. The validity of the Plaintiffs' claim that the damages suffered by the property exceed State Farm's assessment and the home must be razed and rebuilt, not restored.

3. The estimating methods used by State Farm and the reliability and adequacy of its $623,020.03 dwelling damage estimate, dated 6/20/17.

4. The reports provided by other experts in this matter.

5. The common standards and customary practices employed in the property damage restoration industry.


## PROPERTY DESCRIPTION

The subject property is a two (2) level, single family, residential structure owned by the Stovers.  Based upon information and belief, the home was built in 2012 and has approximately 5,416 SF of living area.   It is constructed with dimensional wood framing and utilizes a cast-in-place concrete foundation and slab-on-grade.  The windows are single-hung, insulated vinyl units.  The exterior cladding of the home consists of brick and rock masonry veneer with some wood product siding and architectural treatments.   The roof system is a laminated, composition shingle overlaying an oriented strand board (OSB) deck.  Generally, the house faces south.

---

[8] More than 1,000 photographs were taken to record the observed conditions at the site on June 13, 2018. Those photographs which appear in this report are intended to be representative of, but not a complete depiction, of all observations.

Stover et al. v. State Farm Fire and Casualty Company
U.S.D.C. No.: CIV-17-1002-HE
Case: 2017 L 005618

June 29, 2018
Page 6



Photo 1:  Front of the subject property

## ANALYSIS AND CONCLUSIONS

***Opinion #1:***   *The Plaintiffs and others in this matter have opined that the storm damages suffered by the home indicate that it should be completely demolished and rebuilt.   I disagree.   Often, the witness opinions upon which the Plaintiff's theory are based are in error, lack proper basis and are inconsistent with each other.   Based upon my experience with repairing other residential structures damaged by tornados, it is evident to me that the existing home can be restored.*

**1.1.**   David P. Swyden, P.E., a licensed structural engineer with Benham Design, LLC inspected the Stover home and issued a report dated June 30, 2017.  Swyden opined[9]:

**1.1.1.**   *It would be most cost effective to demolish and replace the residence, rather than rebuild it.*  I believe this opinion is substantially in error, speculative and without basis.  He provides no cost estimate to support his assertion.

---

[9] Swyden's comments are in italics.  My comments are not italicized.

Stover et al. v. State Farm Fire and Casualty Company
U.S.D.C. No.: CIV-17-1002-HE
Case: 2017 L 005618

June 29, 2018
Page 7

**1.1.2.** Swyden infers that the home can be repaired and includes a general list of items that would need to be addressed to accomplish renovation and remediation.

**1.1.3.** *He believed he observed slab and anchor bolt damage at the southeast corner of the residence.* I conducted a closer inspection of the same area and determined that the home's anchor bolts were undamaged.

- One surface shrinkage crack and some chipping of the leading edge of the slab were noted in a few places at the southeast corner of the slab.
- There is evidence that some of the chipping was likely induced at the time of original construction methods, e.g. there is evidence that concrete nails were used to fasten the framing bottom plate to the slab at the fracture point.
- The aberrations are cosmetic and of no consequence in the future performance of the foundation. They can be repaired using conventional concrete restoration methods.
- They will be concealed from view once the home is repaired and they are incorporated into the finished wall assembly.



Chipped foundation edge

**1.1.4.** *A detailed inspection of the concrete slab should be performed when the floor finishes are exposed to view.* This is often routine in the restoration

of homes damaged by tornados.  The debris and floor materials need to be removed to facilitate the inspection.  This inspection customarily occurs when the restoration work begins.   My experience suggests additional concrete slab damages will be highly unlikely; however, if any are present they can be addressed using conventional methods.

**1.1.5.** *The existing foundation system and site conditions should be evaluated to determine building code compliance.*  It is typical in the industry that improvements required by the building code, if any, are dictated by the municipality when the restoration building permit is issued and work starts; hence, it is difficult to attempt to make this determination when the damage estimate is first written.

- In the event that said improvements are required, they can be added to the scope of work as the work progresses and they are identified.   This is the common practice in the restoration industry.
- Sometimes a building inspector requires additional building code driven features, e.g. additional smoke alarms, during construction and on occasion on the eve of a project's completion.  Again, these additional requirements are routinely added to the scope of work and the total paid by the insurance carrier is increased.
- Since the home is of relatively recent construction, circa 2012, it is likely that the foundation as constructed meets the current residential building code.

**1.2.** Jim Gendill, P.E., a licensed structural engineer with Anasazi Engineering, inspected the Stover home and issued a report dated July 13, 2017. Gendill opined:

**1.2.1.** *The most cost effective mediation (sic) of the damage is most likely a complete removal of the structure and foundation, and rebuilding of the dwelling.*  I believe this opinion is substantially in error, speculative and without basis.  He provides no support for his cost effectiveness claim for such an analysis would require comparing the estimated cost of the home's repair to the estimated cost of its replacement.

**1.2.2.** Gendill admits that he has not done an assessment of the integrity of the floor slab.

**1.3.** Chris Ramseyer, Ph.D., P.E., the Plaintiff's expert, issued a report in this matter dated June 15, 2108.  Ramseyer does not opine that the house needs to be razed and rebuilt; instead, he prescribes tasks and procedures that describe restoring the existing structure and correcting components he believes are storm damaged.  Although not intended to be an exhaustive recount, examples of Ramseyer's restoration tasks include:

- All walls need to be returned to vertical.
- The lateral load resisting system would need to be rebuilt.
- Replacement of all drywall.
- Most all wall insulation needs replacement.
- Replacement of the roof system.
- Replacement of all trim and cabinetry work.

**1.3.1.** It should be noted that Ramseyer's recommendations for restoring the property are in large part consistent with the scope of work outlined in the State Farm damage estimate.[10]

**1.3.2.** Aside from those rooms obviously impacted by the force of the tornado, e.g. the southeast bedroom, I observed little cracking of sheetrock at the inside corners of rooms and/or at the wall-to-ceiling interface in the lower level that would indicate:

- Damage to the home's lateral bracing system
- Walls had been moved from their positions as originally constructed.

  However, I agree with Ramseyer that the need for such work (if any) is usually best determined when the exterior walls are opened for view. Opening the exterior walls would occur when the restoration work begins. The cost for addressing any needed repairs to the lateral load resisting system or adjusting framed walls to their original positions could be addressed in a supplemental estimate.[11]

**1.3.3.** Ramseyer believes the home's LVL (laminated veneer lumber) beams and engineered floor joists need to be replaced.
- This opinion is based upon the condition of the home on December 18, 2017, approximately seven (7) months after the date of loss and almost six (6) months after State Farm tendered an actual cash value (ACV) payment of $589,116.71 to get the work started.

---

[10] SF.STOVER_00000584-727.

[11] An estimate is often the starting point for the restoration process; however, by their nature, some damages caused by storms can be difficult to fully determine until they are made clear during the restoration process. It is common practice in the reconstruction industry for additional damages or construction needs to be identified as the work progresses and for supplemental estimates to be written to address them.

Stover et al. v. State Farm Fire and Casualty Company                    June 29, 2018
U.S.D.C. No.: CIV-17-1002-HE                                             Page 10
Case: 2017 L 005618

- The licensed engineers who viewed the damage in the first sixty (60) days following the loss acknowledged that, although engineered joists in the kitchen were water stained, there was no indication that their load bearing capacity was reduced.
- In the event further degradation occurred (presumably due to exposure to the elements) Heesch recommended additional investigation would be required.  Such additional inspections are commonplace in the industry.
- If the structural capacity of the LVL's and engineered joists are insufficient, said condition was likely exacerbated by Stovers' failure to begin the restoration of the work.
- At any rate, my experience suggests that in the event these components were found to be in need of replacement they would have been added to the scope of work in a supplemental estimate.

**1.3.4.** I disagree with Ramseyer's opinion that most economical method to return the home to its pre-loss condition is to demolish and replace it.   His opinion is speculative because he provides no comparison of the estimated repair cost with the estimated cost of replacement.

**1.4.** Kevin Hefley with Dason Fire and Water Restoration, Inc. issued a report dated June 15, 2018.  He provided a replacement cost estimate format because he wrongly believes the home is not repairable.

**1.4.1.** His opinion that the house must be razed is contrary to historical record because many residential structures with damage in similar magnitude as the Stovers' home have been restored using restoration common practices.

**1.4.2.** His opinion is contrary to the written opinions of three (3) licensed professional engineers that inspected the home and outlined guidelines for its repair and restoration, including Plaintiffs' expert Ramseyer.

**1.4.3.** He claims he would not warranty his work if he were called upon to restore the existing home.  This claim is contrary to common industry practices as much more often than not, restoration contractors restore significantly damaged structures from a variety of causes and offer industry standard warranties.

**1.4.4.** He believes the Xactimate "line item" format used by State Farm fails to consider the complexity of the damages.  This is false.  Based upon my direct experience, the line item format requires the tedious quantification of each individual component so that each may be considered individually

and priced, accordingly. In this matter, State Farm conducted a very detailed and specific approach that generated an estimate with approximately 1,500 line items and encompassed 144 typewritten pages.

**1.4.5.** Conversely, Dason estimated with a generalized approach using three (3) typewritten pages. His estimate includes Xactimate's descriptive language (bold italics added for emphasis):

The estimated replacement costs above represent the **approximated costs required to rebuild a similar structure generally described** herein in the referenced geographical market. It includes pricing for labor, materials, applicable permits and fees, sales tax, and contractor's overhead and profit; it does not include costs for major excavation or land value. **This estimate is intended to function as one of several sources of information in estimating a replacement cost and is not guaranteed to represent actual replacement costs in the event of damage or loss.**

Dason's generalized approach is inconsistent with the methodology and format routinely used by insurance carriers and restoration contractors to estimate the cost for restoring property damages.

**1.5.** Based upon my experience with repairing other residential structures damaged by tornados, it is evident to me that the existing home can be restored using the industry standard practices. The home does not need to be razed and rebuilt.

- I have restored many residential structures that have been damaged by tornadic events as well as other catastrophic events, such as fire.
- Many structures I restored exhibited the same or greater degree of damages as I observed at the Stovers' home. The structures were restored using industry standard acceptable and conventional means and methods.
- I utilized the Xactimate estimating software to estimate the anticipated cost to perform the work. My detailed estimates, generated in the same format State Farm employed in this matter, provided adequate funds to properly perform the work.
- As a part of my restoration work for residential owners I provided an industry standard one (1) year warranty of good workmanship.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

_Opinion #2:_ State Farm followed industry standard methods in its determination of the reasonably anticipated cost to restore the damages to the Stovers' home.

Stover et al. v. State Farm Fire and Casualty Company                    June 29, 2018
U.S.D.C. No.: CIV-17-1002-HE                                              Page 12
Case: 2017 L 005618

*The State Farm estimate expresses a scope of work that addresses the damages that were known or could be reasonably inferred by investigation and the consulting advice obtained by licensed engineers at the time the estimate was written. Any additional needed work that might arise during the restoration process would customarily be added by supplemental estimate as this is the industry common practice.*

**2.1.**   The State Farm adjuster for Stovers' residential property claim used Xactimate to estimate the damages. Xactimate is a widely utilized construction estimating software system developed by Xactware Solutions (Xactware). I am familiar with Xactimate and use it in the regular course of business to estimate storm damages. It is considered to be an industry standard. It provides a highly researched pricing database that is updated monthly.

**2.2.**   It should be understood that a property reconstruction estimate is a projection of the anticipated future costs to restore damages. It should be viewed only as a starting point and a reasonable statement of the probable costs to accomplish the work. Its formulation is not an exact science. It is based on the information that is available at the time it is written.

**2.2.1.** The damage investigation and restoration should be viewed as a process. The process usually begins with a site inspection and initial estimate of damages. Often consultants are engaged to offer opinions that inform the estimating process. Usually, and even more so with large losses such as the instant matter, estimates are revised as feedback is received from the restoration contractor, the subcontractors and material vendors on a number of variables, e.g. pricing, availability, etc.

**2.2.2.** More often than not, additional damages are discovered as the work is ongoing and these are added by supplemental estimate. In almost all instances the full nature, extent and cost to accomplish the needed work cannot be known until the work starts and repair professionals are engaged. It is customary for work to begin with the understanding that the scope of work and pricing will be adjusted appropriately as the work progresses.

**2.2.3.** On occasion the governing municipality requires certain construction components to be upgraded to meet the current building code. It is usually unfruitful to speculate on this issue early in the estimating process because often the various building departments have adopted different versions of the building code and have differing code interpretations and

requirements.   It is an industry standard to price code directives, if any, when they become known.  Most municipalities respond to this question with certainty when they issue the building permit; consequently, this information cannot be known reliably until a restoration contractor is engaged and application is made for a building permit.

2.2.4.  It has been my experience that insurance carriers work with the policyholder's chosen restoration contractor to determine the reasonable and necessary cost to fully restore a tornado damaged home as the process continues.  I have not known of an instance when and insurance company refused to revise its damage estimate after being advised of the presence of additional damages or code directives.

2.3.  Despite the qualifications, training, experience and care used by an adjuster or contractor estimator, unavoidable variables can play into the formulation of a damage estimate.  For instance, some of the many elements that require further examination, discussion, consultation and feedback in the ongoing revision of the damage estimate include:

- Slight variations in room and component measurements.  For instance, on occasion inaccurate measurements of damaged components to be recorded, e.g. excessive quantities of roof shingles.
- Data input errors, such as the inadvertent omission, inclusion or duplication of work items or the improper quantification of construction components.  Two (2) examples in the present matter include:   State Farm inadvertently included rock veneer at the interior hallway for > $12,000 and over-estimated the replacement of wood sheathing > $13,000.
- Determinations of material quality grades.
- Cost savings due to economies-of-scale. Neither Xactimate nor any other estimating program I have used provides a mechanism for reducing the anticipated per unit cost as the volume of a restoration task increases or for cost savings that can be created in the grouping of slightly different tasks e.g. applying texture followed by painting.
- Additional damages occur before the work can begin or unavoidably occur during the work process, e.g. breaking a granite top while attempting to remove and reset it to facilitate the other work.

- Sometimes restoration work that is reasonably anticipated at the time the estimate is written is later found to be unnecessary. Examples in the present matter include replacement of all the home's windows when they did not all sustain damage (> $5,000). Conversely, sometimes additional needs only become known as the work proceeds.

2.4.  Consequently, it is common practice in the property restoration industry to create "supplemental estimates" or estimate revisions as the restoration process proceeds and additional damages and/or needs are noted and/or costs are identified.  It is a restoration industry standard to share this additional construction damage/cost information so an "agreed upon scope and price" can be determined and maintained throughout the restoration process.[12]   As a restoration contractor, I have often participated in this process.

2.5.  State Farm appears to have inspected the property for damages using common practices. The individual rooms within the home were surveyed and a scope of work was created to repair the damages.  The room dimensions were utilized to determine the component quantities.

2.6.  The four elevations of the home were also inspected and assessed for damages.  The roof shingle system quantities and ancillary features were determined with satellite imagery, a reliable method my firm employs on a regular basis.

2.7.  The Xactimate pricing database selected, OKLA28_MAY17, is appropriate considering the date of the loss and the geographic locale in which the Stover property is located.  The programmed sales tax rate of 9.25% is accurate.

2.5.  The required component quantities and dimensions used by State Farm in its estimate were closely aligned with those observed during my site inspection.

2.6.  The estimate add-ons for overhead (10%) and profit (10%) comport with my experience as a restoration contractor and my understanding of the proper use of the Xactimate program.

---

[12] "Agreed upon scope and price" is an industry term that represents the culmination of all investigation and estimating processes to reach concurrence among the policyholder, the restoration contractor and the insurance carrier on the reasonable and necessary scope of work and attendant pricing to restore property damages.

Stover et al. v. State Farm Fire and Casualty Company                    June 29, 2018
U.S.D.C. No.: CIV-17-1002-HE                                             Page 15
Case: 2017 L 005618

**2.7.** Based upon photography, other available information and my site inspection, I believe the State Farm estimate generated in June, 2017 was adequate to restore the storm damages that were known at that time. As further outlined in this report, it would be revised as the reconstruction process moved forward to reflect the necessary and reasonable cost to restore the home. This is consistent with my experience as a restoration contractor.

**2.8.** State Farm revised its estimate in May, 2018 and increased it >$9,000. This did not take into account an offset for the >$12,000 over-estimated for non-existent rock veneer in the estimated in the home's main hallway.

*************************************************************************

_**Opinion #3**: The determination of the extent and anticipated cost of restoring a tornado damaged home is a multi-step process that requires site inspections, damage estimates (and often estimate revisions), consultation with consultants, vendors, and restoration contractors, among other tasks. Although the Stovers began this process, they failed to continue in the customary manner with the necessary steps to get their home restored. Based upon my extensive experience in insurance restoration work, I believe their home would have been restored by now had they continued to participate in moving the process forward to its successful conclusion._

**3.1.** State Farm adjuster, Greg Morgan (Morgan), inspected the Stovers' home on May 18, 2017 to begin the process of determining the nature and extent of the damages. On May 22nd Morgan engaged Envista Forensics (Heesch) to assist in determining scope of work needed to restore the home, specifically the extent of structural damage. Such engagement of engineers and building consultants is often part of the inspection and damage estimating process.

**3.2.** On 6/8/17 Morgan verbally confirmed the scope of damages and repairs with Heesch and continued the estimate formulation process.

**3.3.** Morgan met with Stover on 6/23/17 and provided him with State Farm's damage estimate[13] and Heesch's report. At the time the Plaintiffs were still deciding if they would repair the home or start over and rebuild. They were to communicate with State Farm as they reached this decision.[14]

---

[13] SF.STOVER_00000584-727.
[14] SF.STOVER_00000158, at entry date 6/23/17.

Stover et al. v. State Farm Fire and Casualty Company                June 29, 2018
U.S.D.C. No.: CIV-17-1002-HE                                          Page 16
Case: 2017 L 005618

**3.4.**   The Stovers did not have contact with State Farm again concerning the home's damages until July 27, 2017.  A few days later they submitted an engineering report he had obtained from Jim Gendill, P.E. with Anasazi Engineering.  On 8/8/17 the Stovers submitted the Benham Design report authored by licensed engineer, David P. Swyden, P.E.

**3.4.1.**   Both reports opine about the cost effectiveness of replacement of the home versus restoring the home.  Gendill's and Swyden's opinions here lack proper basis for there is no evidence they compared their estimated cost of demolish/replace with their estimated cost to restore.  It is likely that their professional expertise would not extend to the pricing exercises needed to conduct such an analysis.  Even so, the Stovers relied upon their opinions in this regard.

**3.4.2.**   In an industry standard manner State Farm sent the Gendill and Swyden reports to Heesch for review and comment.  Heesch provided a professional written response citing areas of agreement and methodology for resolving any outstanding concerns.

**3.4.3.**   The Swyden and Heesch engineer reports do not call for the complete demolition and "ground up" replacement of the home.  The Swyden, Heesch, and Ramseyer reports outline a scope of work for restoring the home's components.  The reports suggest elements of a "proceed and verify" approach to the restoration that is common within the industry.  This comports with the fact that many times damages caused by storms can be difficult to fully determine until they are made clear as the construction process advances.

**3.5.**   The Stovers started but did not continue in the customary process I typically see in the restoration of storm damaged homes.  Examples include:

- Despite State Farm's request, they did not submit a construction estimate(s) from a contractor of their choice to restore their property for State Farm's consideration and evaluation during the claims process and before filing suit.[15]

---

[15]It is a common practice for an insurance adjuster to participate with the homeowners "contractor of choice" (COC) to reconcile any differences that may exist between the insurance adjuster's estimate and the contractor's estimate to resolve issues of scope, pricing, phasing, special labor and material needs, grades of materials and a host of other variables that almost always play a part in reaching an agreement on what will actually be required and the reasonable cost.  The desired endpoint is to reach what is known in the industry as "an agreed upon scope and price."

- The Stovers reference obtaining a written estimate from Murphey Construction Company in their August 15, 2017 letter to State Farm; however, no estimate was submitted.[16]   The letter quotes a price of $742,000, plus debris removal, but this is to construct a new house--not restore the existing home.   Any attempt to use a "new construction" estimate to reconcile any differences in scope or price with State Farm's restoration estimate likely would not be productive.[17]

- The Stovers did not solicit bid proposals or repair estimates from restoration contractors possessing the requisite knowledge and experience needed to restore a tornado damaged home.[18]

- They relied on the opinion(s) of unnamed contractors (apparently one or more contractors) who apparently opined it would cost them more to restore the home than demolish and replace it.   However, there are no written estimates from any party to substantiate this notion.

- They apparently misinterpreted the Gendill and Swyden reports to establish that the home could not be repaired and/or that repair was not cost effective.   Again, no cost analysis was done to support this position.

- Despite being paid an actual cash value (ACV) payment of $589,116.71, they did not hire an experienced restoration contractor to start the removal of debris, drywall, etc.   This start would have exposed those remaining areas that might conceal additional damages so they could be noted and estimate adjusted, accordingly.

3.6.   On numerous occasions I have started restoration projects where the complete extent of the damages was not fully known at the outset.  In the course of my career I have participated with insurance industry adjusters to reconcile estimates, identify additional damages as they were discovered, and expand the work scope and pricing via supplemental estimates to successful conclusion many times.  Based upon my direct experience, I believe that had the Stovers proceeded in the usual fashion their home would have been restored by this date.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

[16] Murphey's internet presence suggests that the company is a new home builder and not an insurance restoration contractor.

[17] The estimate reconciliation process and reaching an "agreed upon scope and price" require the contractor's estimate to be detailed and delineated in a manner that facilitates examination on a somewhat granular level versus aggregated lump sum pricing.

[18] It should be noted that restoration of tornado damaged homes is considerably different than new home construction.  Usually they are mutually exclusive construction markets.  The respective projects require differing: personnel experience; means and methods; pricing; estimating and project management formats.  Tornado restoration is a specialized segment of construction usually not suited to new home builders.  Usually, new home builders are reluctant to contract for restoration work and prefer to build a new home.

Stover et al. v. State Farm Fire and Casualty Company
U.S.D.C. No.: CIV-17-1002-HE
Case: 2017 L 005618

June 29, 2018
Page 18

I understand that discovery is in progress and this report is subject to modification should additional information be made available to me. Please find attached as a part of this report my current Curriculum Vitae which lists publications I have authored during the last ten (10) years and all cases in which I have given testimony, both at deposition and trial, over the last four (4) years. It establishes my qualifications and my compensation.

Sincerely,

Michael J. Berryman
BERRYMAN ENTERPRISES, INC.

18-05-05E.Report

## CURRICULUM VITAE

**Name:**     Michael J. Berryman
**Born:**     September 23, 1957
             Lincoln, Nebraska

**Occupation:**

President and Chief Executive Officer
Berryman Enterprises, Inc.
General Contractor / Consultant
426 N.W. 5th Street
Oklahoma City, Oklahoma  73102

**Formal Education:**

B.A., Vanderbilt University 1979
Molecular Biology

**Licenses:**

Qualifying Agent (QA) and/or Qualifying Managing Employee (QME) for licensure and/or operating authorization in the following states:

| | |
|---|---|
| Louisiana | Arkansas |
| Virginia | Mississippi |
| West Virginia | Nebraska |

**Building Codes:**

| | |
|---|---|
| UBC | Uniform Building Code |
| BOCA | Building Officials and Code Administration |
| SBCCI | Southern Building Code Congress International |
| IRC | International Residential Code |
| IBC | International Building Code |

**Compensation Structure:**

Expert services and review, study, estimation and written opinions shall be billed at a rate of $245.00/ hour.

Expert services at deposition and trial shall be billed at $375.00/hour.

Stover et al. v. State Farm Fire and Casualty Company
U.S.D.C. No.: CIV-17-1002-HE
Case: 2017 L 005618

June 29, 2018
Page 20

**Previous Depositions and Court Appearances:**

1)  Trinity Baptist Church v.
    Brotherhood Mutual Insurance Services, LLC and Sooner Claims Service,
    Inc.
    Case #: CJ-2011-1157
    District Court of Oklahoma County, State of Oklahoma
    Deposition Date: May 9, 2014

2)  Kimberley K. Ramsey v.
    Farmers Insurance Company, Inc., a Kansas Corporation, and Farmers
    Insurance Exchange
    Case No. CJ-2013-962
    District Court of Cleveland County, State of Oklahoma
    Deposition Date: May 13, 2014

3)  Maria D. Rodriguez v.
    State Farm Lloyds and Luke Andrew Garcia
    Case # DC-13-00992-K
    192nd Judicial Court Dallas County, Texas
    Deposition Date: June 4, 2014

4)  Haiwang Tang and Xiaohong Hu v.
    Richardson Homes
    Case No. CJ-2012-0645
    District Court of Oklahoma County, Oklahoma
    Deposition Date: July 29, 2014

5)  Gray Construction, Inc. and Burdette Construction Co., v.
    Laura E. Knight
    Case No. CJ-2012-545
    District Court of Canadian County, Oklahoma
    Deposition Date: August 7, 2014

6)  AC Dwellings, LLC v.
    John W. Shawver, III and Carrie M. Shawver
    Case No. 71 527 E 00367 13
    American Arbitration Association
    Deposition Date: August 26, 2014

7)  Bruce and Mary Ann Erickson v.
    A.O. Smith Corporation et al.
    Case No. 13-L-1962
    In the Circuit Court Third Judicial Circuit Madison County, Illinois
    Telephonic Deposition Date: October 21, 2014

Stover et al. v. State Farm Fire and Casualty Company
U.S.D.C. No.: CIV-17-1002-HE
Case: 2017 L 005618

June 29, 2018
Page 21

8)   Maria D. Rodriguez v.
     State Farm Lloyds and Luke Andrew Garcia
     Case # DC-13-00992-K
     192nd Judicial Court Dallas County, Texas
     Trial Testimony Date: October 29, 2014

9)   Gwen LeClerc Revocable Living Trust v.
     Candelaria Foster, LLC
     Case No. 01-14-0000-5564
     American Arbitration Association
     Deposition Date: January 6 and 7, 2015

10)  Gwen LeClerc Revocable Living Trust  v.
     Candelaria Foster, LLC
     Case No. 01-14-0000-5564
     American Arbitration Association
     Trial Testimony Dates:  Feb. 26 and 27, 2015

11)  Cynthia Stokes v.
     Asian Restaurant, LLC
     Case No: CJ-2013-2695
     In the District Court of Oklahoma County
     State of Oklahoma
     Deposition Date:  June 26, 2015

12)  Tanya Read v.
     Southwestern Roofing & Metal, Inc., et al.
     Case No:  CJ-2011-8864
     In the District Court of Oklahoma County
     State of Oklahoma
     Deposition Date: July 7, 2015

13)  Martin Brons and Donna Brons v.
     3M Company, et al.
     LASC Case No. BC565859
     Superior Court of the State of California
     County of Los Angeles-Civil Central West
     Deposition Date:  7/24/15

14)  Stephen R. Mastin, Peter Ricci, et al., v.
     A.O. Smith Water Products Co. Inc., et al.
     Index No. 190024/14 and 190424/13
     County of Erie
     Supreme Court of the State of New York
     Deposition Date: 7/28/15

Stover et al. v. State Farm Fire and Casualty Company
U.S.D.C. No.: CIV-17-1002-HE
Case: 2017 L 005618

June 29, 2018
Page 22

15)   Martin Brons and Donna Brons v.
      3M Company, et al.
      LASC Case No. BC565859
      Superior Court of the State of California
      County of Los Angeles-Civil Central West
      Trial Testimony Date: 9/15/15

16)   Chris and Breann Lander v
      American National Property & Casualty Co.,
      Armstrong Bank and Rodney Cottrell
      Case No. CJ-2014-202
      In the District Court of Sequoyah County
      State of Oklahoma
      Deposition Date:  9/21/15

17)   Jordan Bundy v Memport Landing Owner's Association, Inc.
      CJ-2014-3797
      In The District Court of Oklahoma County
      State of Oklahoma
      Deposition Date:  9/22/15

18)   Metro Mart, LLC v North Star Mutual Insurance Co.
      Case No. 14-CV-1210-F
      United States District Court
      Western District of Oklahoma
      Deposition Date:  11/06/15

19)   Larry Winslowe Lee and Susan Provost Lee v
      AK Steel Corp., et al
      File No.:5:13-CV-00826-FL
      United States District Court for the Eastern District
      Of North Carolina Western Division
      Deposition Date: 11/18/15

20)   Maverick Mart, LLC v North Star Mutual Insurance Co.
      Case No. 14-CV-01165-F
      United States District Court
      Western District of Oklahoma
      Deposition Date:  12/09/15

21)   Flanagan Quality Homes, and Bill Flanagan v
      Samuel Lee Daube, and Christi Daube, husband and wife
      Case No. CJ-2014-249
      In The District Court of Carter County
      State of Oklahoma
      Deposition Date:  01/18/16

Stover et al. v. State Farm Fire and Casualty Company
U.S.D.C. No.: CIV-17-1002-HE
Case: 2017 L 005618

June 29, 2018
Page 23

22) Jerry and Christina Young v
State Farm Fire and Casualty Company
Cause No.  CJ-2012-905-TS
In the District Court of Cleveland County
State of Oklahoma
Trial Testimony Date:  1/29/16

23) Ronnie and Sandi Bliss v
Shelter Insurance Company
Case No. CJ-2013-275
In the District Court of Payne County
State of Oklahoma
Deposition Date: 04/04/16

24) Amanda LaBrier v
State Farm Fire & Casualty Company
Case No: 15-04093-NKL
United State District Court
Western District of Missouri Central Division
Deposition Date: 05/12/16

25) Roger Bain v
State Farm Fire and Casualty Company
Case No: CJ-2013-4032
In the District Court of Oklahoma County
State of Oklahoma
Deposition Date: 05/24/16

26) Global One Engineering, LLC v
SiteMaster, Inc.
Case No: 15 CV-583-CVE-FHM
United States District Court for the
Northern District of Oklahoma
Deposition Date:  08/30/16

27) Roger Bain v
State Farm Fire and Casualty Company
Case No:  CJ-2013-4032
In the District Court of Oklahoma County
State of Oklahoma
Trial Testimony Date:  12/07/16

28) Global One Engineering, LLC v
SiteMaster, Inc.
Case No. 15 CV-583 CVE-FHM
In the United States District Court for the
Northern District of Oklahoma
Trial Testimony Date:  12/09/16

Stover et al. v. State Farm Fire and Casualty Company
U.S.D.C. No.: CIV-17-1002-HE
Case: 2017 L 005618

June 29, 2018
Page 24

29)  Jeffrey Bailey, Susan Hicks and Don Williams v
     State Farm Fire and Casualty Company
     Case No. 14-CV-00053-HRW
     United States of District Court
     Eastern District of Kentucky at Ashland
     Deposition Date: 12/16/16

30)  Bill Flanagan v
     Lee Daube, et al
     Case No. CJ-2014-249
     In the District Court of Carter County
     State of Oklahoma
     Trial Testimony Date: 02/13/17

31)  Phillip & Charla Bird v
     Barnett Building Co. and R.J. Byrd Construction, Inc.
     Case No: CJ-2010-1605
     In the District Court of Cleveland County
     State of Oklahoma
     Deposition Date: 02/22/17

32)  Nolan Lamb v
     Certainteed Corporation, et al.
     Case No. MSC 15-00057
     Superior Court of California
     County of Contra Costa
     Deposition Date: 02/27/17

33)  Mitchell and Melanie Payne v
     Republic Insurance Company
     Case No. CJ-2013-3894
     In the District Court of Tulsa County
     State of Oklahoma
     Trial Testimony Date: 04/11/17

34)  John and Laura Foegelle v
     Kelly and Mary O'Dell
     Case No. CJ-2015-248
     In the District Court of Wagoner County
     State of Oklahoma
     Deposition Date: 04/18/17

35)  Charles and Kathleen Abbott v
     NIBCO INC., Locke Supply and Preferred Total
     Mechanical & Plumbing
     In the District Court in and for Tulsa County
     State of Oklahoma
     Case No. CJ-2012-03217
     Deposition Date: 05/16/17

Stover et al. v. State Farm Fire and Casualty Company                June 29, 2018
U.S.D.C. No.: CIV-17-1002-HE                                          Page 25
Case: 2017 L 005618

36)   Steven L. Holtsclaw v
      BorgWarner Morse Tec, Inc., et al.,
      Superior Court of the State of California
      County of Los Angeles
      No.: BC631830
      Deposition Date: 06/28/17

37)   Patrik C. McCall and Malinda McCall v
      State Farm Fire and Casualty Company
      In the United States District Court for the
      Eastern District of Oklahoma
      Case No. 16-CIV-457-RAW
      Trial Testimony Date: 08/10/17

38)   Keith E. Best, et al v
      Arthur S. Bridal, et al
      In the District Court of Logan County
      State of Oklahoma
      No. CJ-2012-137
      Trial Testimony Date: 11/16/17

39)   Steven F. and Jean Lucas v
      Charles J. Miller
      In the District Court of Lincoln County
      State of Oklahoma
      Case No.: CJ-2016-34
      Deposition Date: 12/07/17

40)   Leah Wiseman, personal Representative of
      The Estate of Jack Wiseman, deceased v
      Choice Hotels International, Inc. and Idabel
      Hospitality, Inc. d/b/a Comfort Suites
      In the District Court of McCurtain County
      State of Oklahoma
      Case No. CJ-2015-106
      Deposition Date: 12/20/17

41)   Ronald Diaso, Sr., and Virginia Diaso v
      CBS Corporation, et al
      Superior Court of the State of California
      For the County of Los Angeles
      Case No. BC661775
      Deposition Date: 01/11/18

42)   Michael Max v
      Heritage Construction Corporation, an Oklahoma Corporation
      In the District Court in and for Tulsa County
      State of Oklahoma
      Case No. CJ-2008-832
      Deposition Date: 03/30/18

43)  Shelter Mutual Insurance Co. A/S/O
     Charles Givens and Laurie Givens v
     Oklahoma Gas & Electric Co., Davis H. Elliot &
     CoxCom, LLC
     In the District Court of Oklahoma County
     State of Oklahoma
     Case No. CJ-17-2825
     Deposition Date: 4/09/18

44)  Stephen S. Hull, Ph.D and Kathryn E. Reilly, MD., v
     Michael A. Gilles and Gay Lynn Gilles
     In the District Court in and for Oklahoma County
     State of Oklahoma
     Case No. CJ-2009-7709
     Deposition Date: 4/23/18

45)  Precious Joiner v
     Almonte Apartments, LLC dba Almonte Apartments;
     Almonte Company, LLC: dba Almonte Apartments; and
     Myan Management Group, LLC
     In the District Court of Oklahoma County
     State of Oklahoma
     Case No:  CJ-2015-2798
     Deposition Date: 4/24/18

46)  Jennifer Lin Cooper, et al. v.
     New Dominion, LLC, et al.
     In the District Court of Cleveland County
     State of Oklahoma
     Case No: CJ-2015-24
     Class Certification Hearing Date: 5/16/18

47)  Stephen S. Hull, Ph.D. and Kathryn E. Reilly M.D,
     Husband and Wife, v
     Michael A. Gilles and Gay Lynn Gilles, Husband and Wife
     In the District Court in and for Oklahoma County
     State of Oklahoma
     Case No:  CJ-2009-7709
     Trial Testimony Date:  05/24/18

48)  Lorine Mitchell v
     State Farm Fire and Casualty Company
     In the United States District Court for the
     Northern District of Mississippi Oxford Division
     Case No. 3:17-cv-170-MPM-RP
     Deposition Date: 06/07/18

Stover et al. v. State Farm Fire and Casualty Company
U.S.D.C. No.: CIV-17-1002-HE
Case: 2017 L 005618

June 29, 2018
Page 27

49) Jennifer Lee Allen v.
    Tulsa Riverside Park, LLC dba
    Riverside Apartments, Inc. et al.
    In the District Court in and for Tulsa County
    State of Oklahoma
    Case No: CJ-2015-03679
    Deposition Date: 06/29/18