# EXHIBIT 2

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE WESTERN DISTRICT OF OKLAHOMA

 3

 4  PATRICK PETE STOVER, SHERI LYNN    )
    STOVER,                            )
 5                                     )
              Plaintiffs,              )
 6                                     )No.
    vs.                                )CIV-17-1002-HE
 7                                     )
    STATE FARM FIRE & CASUALTY COMPANY,)
 8  a foreign for-profit insurance     )
    corporation,                       )
 9                                     )
              Defendant.               )
10

11

12

13        VIDEOTAPED DEPOSITION OF MICHAEL BERRYMAN

14            TAKEN ON BEHALF OF THE PLAINTIFFS

15                IN OKLAHOMA CITY, OKLAHOMA

16                    ON AUGUST 31, 2018

17

18

19        REPORTED BY:  KAREN B. JOHNSON, CSR

20

21

22

23

24

25
```

Michael Berryman                                             August 31, 2018

```
                                                              Page 2
 1                    A P P E A R A N C E S

 2

 3    For the Plaintiffs:

 4                            Michael D. McGrew
                              Matthew McGrew
 5                            Michael D. McGrew & Associates
                              400 North Walker, Suite 115
 6                            Oklahoma City, Oklahoma 73102
                              mcgrewslaw@yahoo.com
 7

 8

 9    For the Defendant:

10                            Lance Leffel
                              Gable Gotwals
11                            211 North Robinson
                              One Leadership Square
12                            15th Floor
                              Oklahoma City, Oklahoma 73102
13                            lleffel@gablelaw.com

14

15    Also Present:

16                            Mary McGrew
                              Bruce Rodgers, Videographer
17

18

19

20

21

22

23

24

25
```

Michael Berryman                                    August 31, 2018

```
                                                    Page 25
 1    allegation that, as you know, the Tyvek on the home,
 2    there is no Tyvek or what's better described as
 3    water resistive barrier on the outside of the
 4    sheathing, and there's been an allegation that all
 5    the brick would have to come off the house in order
 6    to put the Tyvek on where it doesn't exist
 7    presently, and that's inaccurate.
 8         Q    Well, then I guess we'll just have to let
 9    the code official decide that.  But nonetheless, may
10    I ask you if you are a licensed adjuster?
11         A    I am not.
12         Q    Have you ever worked adjusting claims?
13         A    No.
14         Q    Could I have the insurance department's
15    directive?  By the way, I'll mark this as Exhibit
16    Number 1 and I'll reference that it is a bulletin
17    sent by the insurance department, the authority over
18    all carriers licensed to do business in the state of
19    Oklahoma.  And they issued this directive April 25th
20    of 2016 and provided it to every carrier that is
21    licensed to do business in the state of Oklahoma.
22              (Plaintiff's Exhibit Number 1 marked for
23              identification and made part of the
24              record)
25         Q    (By Mr. McGrew)  I want to take you to
```

Page 131

1   there's something wrong with them.
2       Q    Okay, sir.  Now, I'm going to ask you, at
3   the time you went out and inspected the Stovers'
4   home, you knew at that time that there was an issue
5   between the Stovers and State Farm as to whether or
6   not there was additional damage to the I-joists, the
7   engineered I-joists that had not been accounted for,
8   didn't you?
9       A    I don't -- I don't recall if I knew that
10  or not.  I mean, is that in somebody's report that
11  you're referring to?
12      Q    I'm asking you if you knew that at the
13  time.
14      A    I just don't recall if I specifically knew
15  that or was focusing on that, you know, the fact
16  that there was a disagreement or not, I looked at
17  them, but --
18      Q    You never got on a ladder or even got
19  close to looking at them, did you?
20           MR. LEFFEL:  Objection; form.
21           THE WITNESS:  I was, you know, between
22  here and this ceiling from them.
23      Q    (By Mr. McGrew)  You told us that they
24  were discolored from their exposure, didn't you?
25      A    A few of them were, yes, at the time I

Michael Berryman                                August 31, 2018

```
                                                  Page 134
 1      A     I don't know.
 2      Q     Well, do you have any knowledge?
 3      A     Of what?
 4      Q     Scientific basis about the condition of
 5   the engineering I-joists at the Stovers' home.
 6      A     I would take the joist and have it tested.
 7      Q     So a part of it or the whole one?
 8      A     Depends on what the lab -- how big of a
 9   sample they said they needed.
10      Q     Do you know exactly what kind of testing
11   would be done?
12      A     No.
13      Q     Do you know even generally what type of
14   testing could be done?
15      A     Probably some sort of ASTM test.
16      Q     Well, what sort?
17      A     Like a load test or -- I mean, I don't
18   know, I'm not a testing person, so I can't tell.
19      Q     And if you don't know how things are done,
20   it's okay to say you don't know, I'm not trying to
21   make you into something you're not or pretend you're
22   not something you are, so if you don't know what
23   kind of testing would be done to determine whether
24   or not the engineering I-joists were damaged or
25   impacted from the storm, you can say.
```

Page 135

1   A   Right. I don't specifically know the
2   test.
3   Q   And is it true that you never got on a
4   ladder and looked close at the engineered I-joists
5   at the Stovers' home?
6   A   That's true, because it wouldn't have made
7   any difference whether I looked at it upclose or
8   not, it would not have divided the line of truth. A
9   visual examination is not going to do it.
10  Q   Well, do you know what makes them in need
11  of being replaced based upon insurance standards
12  versus what you might do as a reconstruction
13  contractor?
14  A   What insurance standards are you referring
15  to?
16  Q   I'm asking you if you know, and if you
17  don't know what insurance standards are of how to
18  define damage, you can say.
19  A   I haven't -- I haven't been schooled on
20  insurance standards, whatever you're -- not sure
21  what's -- I'm sure there's lots of insurance
22  standards.
23  Q   And you're not familiar with insurance
24  standards, are you?
25  A   I'm not familiar with insurance standards,

```
 1   but I'm very familiar with what goes on in the
 2   marketplace in the insurance property restoration
 3   business.
 4        Q    You -- you do know that engineered
 5   I-joists are manufactured not to be outside;
 6   correct?
 7        A    Generally speaking, they're not for
 8   outside use, but they do get rained on during the
 9   construction process.
10        Q    Understood.  But the Stover home was
11   exposed to repetitive rains; correct?
12        A    Well, sure, over a 13-month period, no
13   doubt.
14        Q    Do you know whether or not, as you sit
15   here today, at the time of your inspection of the
16   Stovers' home, do you know if any of the engineered
17   I-joists were damaged in any way?
18        A    The day I was there?
19        Q    Yes, sir.
20        A    I don't know that without having them
21   tested.
22        Q    Okay.  So likewise, if you go back to the
23   day after the tornado at the Stovers' home, you
24   don't know whether or not any of the engineered
25   I-joists were damaged then, either, do you?
```

Michael Berryman                                      August 31, 2018

                                                              Page 137

 1        A    All -- all I know is what I can read and
 2   see in the photographs that were taken by others
 3   back then.
 4        Q    Okay.  Do you know by looking at photos
 5   whether or not any of the engineered I-joists were
 6   damaged at the Stovers' home?
 7        A    Based on the photography, I don't see any
 8   damage.
 9        Q    Would you agree that it was limited
10   photography that you had available to you?
11        A    Yes, I mean, it's photography, it's only a
12   certain number of photos.
13        Q    And so isn't it true that you don't know,
14   as you sit here today, whether more than two
15   engineered I-joists at the Stover home were damaged
16   as a result of the tornado?
17        A    I don't have any evidence of that.
18        Q    You don't know one way or the other, do
19   you?
20        A    All I know is by looking at the photos
21   that I have, just like I said before, I wasn't there
22   so I have to rely on photos.
23        Q    Okay.  My question is, as you sit here, do
24   you know one way or another whether or not more than
25   two of the engineered I-joists at the Stovers' home

Michael Berryman								August 31, 2018

```
                                                    Page 138
 1   were damaged by the tornado?
 2        A    I don't know that.
 3        Q    Do you know one way or another, as you sit
 4   here today, whether more than two of the engineering
 5   I-joists were damaged within the first three months
 6   after the storm, the tornado, as a result of
 7   resultant water damage?
 8        A    I don't know that.
 9        Q    As you sit here today, through everything
10   you've looked at, you don't know how many of the
11   engineered I-joists were damaged at the Stovers'
12   home, do you?
13        A    I didn't see them myself, I know it's in
14   the photography, what's written in the reports,
15   that's all I know.
16        Q    But you don't have any personal knowledge
17   from your own inspection how many engineered
18   I-joists may have been damaged; correct?
19        A    That's correct.
20        Q    So if you were the contractor and it
21   turned out that all of them were damaged, you would
22   have to either absorb that cost, charge the
23   homeowner for it, or issue a supplement for all of
24   those; correct?
25        A    That would be the three choices, but the
```