**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PATRICK PETE STOVER, ET AL., | |
| Plaintiffs, | |
| v. | NO.   5:17-cv-01002-HE |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

**STATE FARM'S RESPONSE TO PLAINTIFFS' MOTION
TO EXCLUDE THE EXPERT TESTIMONY OF MICHAEL BERRYMAN**

Defendant, State Farm Fire and Casualty Company ("State Farm"), submits the following Response to the Motion to exclude the expert testimony of Michael Berryman ("Mr. Berryman") filed by Plaintiffs, Patrick Pete Stover and Sheri Lynn Stover ("Plaintiffs"), and respectfully requests that said Motion be denied.

## ARGUMENTS AND AUTHORITIES

A party's expert witness may provide testimony based on "scientific, technical, or other specialized knowledge" in accordance with FED. R. EVID. 702.   The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.   To be admissible, expert testimony must be both relevant and reliable. *Richardson v. Watco Cos., Inc.*, CIV-10-0047-HE, 2011 WL 12842517 *1 (W.D. Okla. April 29, 2011).

> **PROPOSITION I:    MR. BERRYMAN IS QUALIFIED TO PROVIDE AN EXPERT OPINION REGARDING THE TOPICS IDENTIFIED IN HIS RULE 26 REPORT.**

Plaintiffs assert Mr. Berryman is not qualified to testify regarding insurance industry standards or practices.   They accurately note that Mr. Berryman is not a licensed insurance adjuster and has never adjusted claims.   (*See* Plaintiffs' Motion to Exclude Mr. Berryman, p. 5 [Doc. No. 76].)   State Farm agrees that Mr. Berryman is not qualified to offer an opinion concerning the standards to which an insurance company and/or its adjusters are held.   Nevertheless, Mr. Berryman is eminently qualified to provide his expert opinion concerning the repairability of the Plaintiffs' home (the "Dwelling"), as well as construction/restoration industry standards.   Concerning these topics, Mr. Berryman's proffered testimony is both relevant and reliable.

Plaintiffs complain that Mr. Berryman's Rule 26 Report "makes frequent statements regarding insurance industry standard practices[,] and he often describes how he believes an insurance company should act and behave."   (*See* Plaintiffs' Motion to Exclude Mr. Berryman, pp. 4-5 [Doc. No. 76].)   This is a blatant mischaracterization of Mr. Berryman's Rule 26 Report.   In fact, Mr. Berryman's Rule 26 Report consistently references *restoration industry* standards and practices.   Mr. Berryman is qualified to testify concerning these standards because he has worked as a restoration contractor for

approximately 40 years.  (*See* Berryman Report, pp. 1-3, **EXHIBIT 1**.)  His wealth of experience in this area imbues his expert opinions with reliability so as to warrant submission to the jury.

Plaintiffs' list five "examples" of the language utilized in Mr. Berryman's Rule 26 Report to which they object:

1. "Dason's generalized approach is inconsistent with the methodology and format routinely used by insurance carriers **and restoration contractors to estimate the cost for restoring property damages**."[1]

2. "[T]he existing home can be restored using . . . industry standard practices."

3. "Any additional needed work that might arise during the restoration process would customarily be added by supplemental estimate as this is the industry common practice."

4. "State Farm appears to have inspected the property for damages using common practices."

5. "In an industry standard manner State Farm sent the Gendill and Swyden reports to Heesch for review and comment."

(*See* Berryman Report, pp. 11-12, 14, 16, **EXHIBIT 1** (emphasis added).)  All of these quotations relate directly to the standards utilized in the restoration construction industry. As Mr. Berryman makes clear in his Rule 26 Report, restoration construction work is

---

[1] The emphasized portion of this quotation was omitted from Plaintiffs' Motion.  It is included herein to provide the Court a clearer picture of Mr. Berryman's Rule 26 Report. Additionally, this quotation summarizes Mr. Berryman's opinion of the generalized approach utilized by Plaintiffs expert, Kevin Hefley, who owns Dason Fire & Water Restoration, Inc.   Dason is a construction/restoration contractor—not an insurer. Although Plaintiffs claim this opinion is aimed at insurance industry standards, this is simply not the case.

interwoven with various insurance matters, including payment by the carrier for the work to be done:

> In the course of my career as a general contractor my firm has provided property restoration services on hundreds of structures, including residential homes that have been damaged by tornadic events. *The property damages were covered by insurance policies issued by at least twenty (20) different insurance carriers*. . . . In the regular course of business I estimate the construction cost and outline the scope of work that is an integral part of my firm's offers to contract for needed property restoration.
>
> I have for the last seventeen (17) years utilized Xactimate, a computerized estimating program, to determine the estimated cost of property damage restoration.[] *I interface with insurance professionals and have developed a keen understanding of the customary means, methods and pricing for the restoration of damaged real property*.
>
> On more than 1,000 occasions, *my firm has been hired as a consultant by property owners, property management companies, insurance carriers and others* to inspect and render opinions on the nature and extent of property damages as well as the anticipated cost of their repair.

(*See* Berryman Report, pp. 2-3, **EXHIBIT 1** (emphasis added).)   Indeed, restoration construction work is sometimes referred to as "insurance restoration work" by those in the industry.   (*See* Berryman Report, p. 15, **EXHIBIT 1**.)

Restoration construction work often intersects with the insurance industry. Accordingly, Mr. Berryman has extensive experience dealing with adjusters, Xactimate, determining the scope of a loss, and determining what repairs are reasonably necessary to remediate a damaged structure.   As this Court has recognized, questions of construction

and/or remodeling practices are not totally divorced from the insurance industry, and Mr. Berryman is qualified to provide an expert opinion thereon.

In *Hammer v. State Farm Fire & Casualty Co.*, CIV-11-00157-HE, 2012 WL 12861115 (W.D. Okla. Aug. 23, 2012), Mr. Berryman was retained as an expert witness in an insurance dispute before this Court.   The opinions sought to be introduced into evidence were "(1) that whether a general contractor is needed on a particular restoration project depends on the nature and complexity of the needed repairs, and (2) that in the circumstances existing in [*Hammer*], a general contractor was unnecessary."   *Id.* at *1. The plaintiffs sought the exclusion of Mr. Berryman's opinions, arguing that "his background is in the construction industry rather than insurance adjusting or the insurance industry generally," making him "unqualified to offer opinions pertinent to [the] case." *Id.*   This Court denied the plaintiffs' *Daubert* motion and rejected those arguments:

> The court is unpersuaded.   As the court [previously recognized], defendant was obliged to tender to plaintiffs, at the time of the initial estimate of damage, an amount representing the actual cash value of the loss.   That amount represents those costs likely to be incurred in replacing the covered loss.   Whether the costs of a general contractor were "likely to be incurred" ***is not exclusively an insurance question, but necessarily involves consideration of the underlying circumstances grounded in the actual repairs or repair process***.   Stated otherwise, the question of whether an adjustor has accurately <u>predicted</u>, at the time of the initial estimate, the costs likely to be incurred cannot be divorced from the factors actually determining those costs.   In any event, in the circumstances of this case, ***the court concludes the pertinent inquiry is as much a question of construction and/or remodeling practice as it is one of insurance practice and that Mr. Berryman is qualified to offer the opinions involved here***.

5

*Id.* (citations omitted) (underlining in original) (emphasis added).

In the present matter, Mr. Berryman was retained to provide opinions concerning (1) "[t]he nature and extent of the storm damages as well as the necessary scope of work to restore [the Dwelling]," (2) "[t]he validity of the Plaintiffs' claim that the damages suffered by the property exceed State Farm's assessment and the home must be razed and rebuilt, but not restored," (3) "[t]he estimating methods used by State Farm and the reliability and adequacy of its $623,020.03 dwelling damage estimate, dated 6/20/17," (4) "[t]he reports provided by other experts in this matter," and (5) "[*t*]*he common standards and customary practices employed in the property damage restoration industry*." (*See* Berryman Report, pp. 4-5, **EXHIBIT 1** (emphasis added).)

Plaintiffs incorrectly claim that Mr. Berryman's proffered opinions are, at their core, related to the insurance industry.   They are not.   The central issue in this case is whether State Farm breached the Policy by failing to pay Plaintiffs an adequate amount to repair or replace the Dwelling.   As explained in State Farm's Motion for Partial Summary Judgment, Plaintiffs were entitled to receive the *lesser* of the cost to repair the Dwelling and the cost to completely replace it.   (*See* State Farm's Motion for Partial Summary Judgment, p. 17 [Doc. No. 63].)   Thus, Plaintiffs' claims necessarily depend on (1) whether the Dwelling was capable of being repaired, and (2) if the Dwelling *was* capable of being repaired, whether the cost of such repairs was less than the cost of total replacement.

State Farm originally estimated the ACV of the cost to repair the Dwelling to be $589,116.71.   Plaintiffs dispute that this was an adequate payment under the Policy, and

they claim State Farm's failure to pay additional benefits amounts to bad faith.   State Farm thus retained Mr. Berryman to provide an expert opinion on State Farm's estimating methods and the reliability of its initial estimate based on the information available to it at that time.   (*See* Berryman Report, pp. 4-5, **EXHIBIT 1**.)

Mr. Berryman's proffered opinions relate to the standards and practices employed in the restoration construction industry.   While the restoration construction industry intersects with the insurance industry in many ways, Mr. Berryman's opinions are nonetheless premised on more than 40 years of experience performing restoration construction services.   The projects on which Mr. Berryman and his firm have worked over the years were "covered by insurance policies issued by at least twenty (20) different insurance carriers."   (*See* Berryman Report, p. 2, **EXHIBIT 1**.)   The fact that insurance carriers paid for these restoration projects does not change the fact that Mr. Berryman and his firm *worked as the general contractor for these projects*.   He is not an adjustor, but the very nature of his restoration work has caused him to "interface with insurance professionals and . . . develop[] a keen understanding of the customary means, methods and pricing for the restoration of damaged real property."   (*See* Berryman Report, p. 3, **EXHIBIT 1**.)

Mr. Berryman has utilized Xactimate for approximately 17 years "to determine the estimated cost of property damage restoration."   (*See* Berryman Report, p. 3, **EXHIBIT 1**.) The mere fact that insurance adjustors also use Xactimate does not change the reality that Mr. Berryman is qualified to assess the validity and accuracy of State Farm's estimate.   He is also eminently qualified to opine that (1) the Dwelling could have been restored using

restoration construction industry standard practices, and (2) the Dwelling did not need to be razed and rebuilt from the ground up.   (*See* Berryman Report, p. 11, **EXHIBIT 1**.)   Mr. Berryman's expert testimony bears directly on these critical issues, making it helpful to the jury in accordance with FED. R. EVID. 702.

Finally, Mr. Berryman is qualified to testify concerning the industry standard practice of generating supplemental estimates to address new damages discovered one remediation has begun.   During his deposition, Mr. Berryman testified:

> **Q:** **So you said that your company could come in and do the restoration work just being paid for by State Farm and return the Stovers' home to its preloss condition?**
>
> A: Yes, based -- based on - - now, I guess I need to ask you what -- what time frame, then or now or --
>
> **Q:** **Well, let's start with now because you saw it in June of '18, so let's start with June of '18, would you have been able to restore the Stovers' home for the price paid to them by State Farm?**
>
> A: Well, best way for me to answer that would be to answer that any time a customer asks me at any time, here's -- here's what our insurance company has estimated, can you do this scope of work for this price, that's really what they're asking, and so I look at it and I say yes. And then I -- I tell them all, because it's part of -- it's part of the operating procedure in our business, then I would say to them, I don't think I've ever had a project that when it got started, there wasn't something that needed to be added to the estimate, either something that was missed, something that was miscalculated, something that's not available.   And I tell them, look, there's going to be supplemental estimates in this.
>
> So if you were asking me today, would you go out there and do this scope of work that's in here now for the

> pricing that's in here, the answer to that is, yes.   But I would also say in performance of the work, once the slab's cleaned off, once the Sheetrock's taken down, I'm not saying that I wouldn't have to go back and say hey, here's something that we found or we applied for the building permit, the code official said we've got to do XYZ, then I -- I would estimate that for the policyholder and submit it to the carrier and get that approved.

> **Q:    I understand the concept of supplements, and that's what you're describing, isn't it?**

> A:     Yes.

(*See* Depo. of Michael Berryman, pp. 107-08, **EXHIBIT 2**.)   The creation of supplemental estimates is standard operating procedure in the restoration construction industry, and Mr. Berryman is qualified to testify as such.

As demonstrated above, the very nature of restoration construction work oftentimes implicates the involvement of insurance companies and estimates created by individual adjustors.   At the core of this litigation, as well as Mr. Berryman's Rule 26 Report, are questions pertaining to the repairability of Dwelling and the cost thereof.   What was true in *Hammer* is also true in this case—"the pertinent inquiry is as much a question of construction and/or remodeling practice as it is one of insurance practice[,] and . . . Mr. Berryman is qualified to offer the opinions involved here."   *Id.*   His testimony is both relevant and reliable in accordance with FED. R. EVID. 702 and *Daubert*.   Therefore, Plaintiffs' motion to exclude his expert testimony should be denied.

**PROPOSITION II:     MR. BERRYMAN'S OPINION CONCERNING THE CONDITION OF THE I-JOISTS IN THE DWELLING IS RELIABLE.**

Plaintiffs complain that Mr. Berryman's opinion regarding the condition of the I-joists in the Dwelling is unreliable.   In support of this proposition, they claim Mr. Berryman "failed to adequately inspect" the I-joists because he did not use a ladder to observe them from a closer distance.   (*See* Plaintiffs' Motion to Exclude Mr. Berryman, p. 7 [Doc. No. 76].)   Without offering any evidence in support, Plaintiffs summarily conclude that "[p]roper inspection of the I-Joists requires a ladder, as I-Joists are part of the ceiling structure."   (*See* Plaintiffs' Motion to Exclude Mr. Berryman, p. 7 [Doc. No. 76].)

Notably, Mr. Berryman's Rule 26 Report does not include opinions regarding the condition of these I-joists.   It simply states as follows:

> The licensed engineers who viewed the damage in the first sixty (60) days following the loss acknowledged that, although engineered joists in the kitchen were water stained, there was no indication that their load bearing capacity was reduced.
>
> ***In the event further degradation occurred*** (presumably due to exposure to the elements) Heesch recommended additional investigation would be required.   Such additional inspections are commonplace in the industry.
>
> ***If*** the structural capacity of the . . . engineered joists [is] insufficient, said condition was likely exacerbated by Stovers' failure to begin the restoration of the work.
>
> At any rate, my experience suggests that ***in the event these components were found to be in need of replacement*** they would have been added to the scope of work in a supplemental estimate.

(*See* Berryman Report, pp. 9-10, **EXHIBIT 1** (emphasis added).)   As the Court can see, Mr. Berryman has never attempted to offer an opinion concerning his visual inspection of the I-joists.   Rather, he concluded that *if the I-Joists had deteriorated since the original inspections of the Dwelling*, such degradation was likely due to an extended exposure to the elements as a result of Plaintiffs' failure to begin restoring the Dwelling.   He further concluded that *if* these components ultimately needed to be replaced, "they would have been added to the scope of work in a supplemental estimate."   (*See* Berryman Report, pp. 9-10, **EXHIBIT 1**.)   Mr. Berryman did not need to view the I-joists from a ladder in order to arrive at these conclusions.

State Farm additionally points out the implication of Plaintiffs' arguments on this subject.   They contend Mr. Berryman's testimony regarding the I-joists is unreliable because "an analysis of the I-joists would require laboratory testing."   (*See* Plaintiffs' Motion to Exclude Mr. Berryman, p. 8 [Doc. No. 76].)   Mr. Berryman did not conduct such testing, and State Farm does not dispute that no such testing was ever performed. However, if the failure to test the I-joists precludes Mr. Berryman's opinion in this regard, then any opinions concerning the I-joists held by Plaintiffs' expert, Ramseyer, should be excluded for the same reason.

## <u>CONCLUSION</u>

Mr. Berryman possesses a wealth of knowledge regarding the restoration construction industry.   This knowledge has been acquired through approximately 40 years of experience.   As the Court can see, this industry does intersect with the insurance business in some respects.   Nevertheless, the basis of Mr. Berryman's knowledge and

11

experience is his work as a general contractor—making him eminently qualified to testify concerning the estimate- and construction-related subjects involved in this case.

Despite Plaintiffs arguments to the contrary, Mr. Berryman has formulated opinions which are well within his realm of expertise.   These opinions relate to the nature and extent of the damages to the Dwelling, the accuracy of State Farm's estimate of Plaintiffs' claim under Coverage A of the Policy, whether the Dwelling should have been repaired or completely destroyed and rebuilt, the reports of the other experts in this matter, and the common standards and customary practices within the restoration construction industry. It is disingenuous to claim these opinions relate to "insurance industry standards" and are merely "couched" as property restoration business standards.   (*See* Plaintiffs' Motion to Exclude Mr. Berryman, p. 6 [Doc. No. 76].)

Mr. Berryman is qualified to testify about the subjects identified in his Rule 26 Report.   Moreover, his proffered testimony is relevant and reliable to the issues presented in this case.   Therefore, State Farm respectfully requests that the Court deny Plaintiffs' Motion to exclude his expert testimony.

Respectfully submitted,

*s/ Jace T. White*
_____
Jeffrey A. Curran, OBA # 12255
Lance E. Leffel, OBA # 19511
John M. "Jake" Krattiger, OBA # 30617
Jace T. White, OBA # 32892
GABLEGOTWALS
One Leadership Square, 15th Floor
Oklahoma City, Oklahoma 73102-7101
Telephone:   405-235-5500
Facsimile:   405-235-2875
Email:       jcurran@gablelaw.com
             lleffel@gablelaw.com
             jkrattiger@gablelaw.com
             jwhite@gablelaw.com
*ATTORNEYS FOR DEFENDANT,*
  *STATE FARM FIRE AND*
  *CASUALTY COMPANY*

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jeffrey A. Curran
John M. Krattiger
Lance E. Leffel
Mathew M. McGrew
Michael D. McGrew
Robin D. McGrew

*s/ Jace T. White*
_____
For the Firm